**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ALEC BERGLUND,<br><br>Plaintiff,<br><br>v.<br><br>HEIDELBERG MATERIALS MIDWEST AGG, INC. and DAVE MOSELEY,<br><br>Defendants. | No. 25 CV 13385<br><br>Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

Alec Berglund spent eight years as a mechanic for Heidelberg Materials, most of them as the only full-time mechanic in its marine department. In August 2024, he hurt his knee and missed two days of work. Before he had asked for leave under the Family and Medical Leave Act, Heidelberg fired him because he had accrued too many absences under its attendance policy. Thirteen days later, after Berglund applied for FMLA leave, Heidelberg rescinded his termination. Berglund spent the rest of his FMLA leave—and two additional months thereafter—recovering from knee surgery. When his surgeon cleared him to return in late December, Berglund did not come back, and Heidelberg fired him again.

Berglund, bringing claims under the FMLA and Americans with Disabilities Act, says that the first termination was retaliation for FMLA leave he had taken earlier that year, that Heidelberg gave his job away while he was on leave, and that it failed to accommodate his disability. Heidelberg and its plant manager, Dave Moseley, maintain that they corrected an attendance decision once Berglund applied

for leave, granted every extension he requested, and never heard from him when it was time to return. Berglund moves for summary judgment on his FMLA interference claim, [45], and defendants cross-move for summary judgment on all claims, [64]. For the reasons discussed below, defendants' motion is granted and Berglund's is denied.

## I. Legal Standards

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, I view the facts and draw all inferences in the light most favorable to the nonmoving party. *Zemlick v. Burkhart*, 164 F.4th 1004, 1010 (7th Cir. 2026). I do not weigh evidence or make credibility determinations—those tasks are entrusted to the jury. *Id.* The parties have filed cross-motions, so I consider each motion on its own, viewing the facts and drawing inferences in favor of the party opposing the motion under consideration. *Hess v. Bd. of Trs. of S. Ill. Univ.*, 839 F.3d 668, 673 (7th Cir. 2016).

## II. Background

Heidelberg makes building materials and operates an industrial facility known within the company as the Lockport facility. [79] ¶ 1.[1] Berglund started as a mechanic

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. The facts are taken from Berglund's response to defendants' statement of material facts, [79], and defendants'

in 2016, and from about 2017 on he was the only employee assigned full-time to the marine department, where he serviced a fleet of tugboats and other vehicles. [79] ¶¶ 3–5. His supervisor was Brian Glagola. [79] ¶ 6.

Under Heidelberg's attendance policy, an employee who accumulates twelve points is subject to termination. [79] ¶¶ 17–18. By August 8, 2024, Berglund had accumulated ten points. [79] ¶ 17. But FMLA absences generate "no points." [84] ¶ 3. Berglund began taking intermittent FMLA leave in March 2024. [79] ¶ 16. His FMLA absences frustrated Glagola, who complained about them to his own manager, Darren Melvin. [84] ¶¶ 6, 8. Melvin warned Berglund that he "needed to be careful about using days and taking days off" because management was "watching." [84] ¶ 6. Berglund later texted Glagola that he now knew "what [Melvin] meant when he warned me about using FMLA time and that [Moseley] was watching," and Glagola testified that "[Moseley] was stringently watching his time." [84] ¶ 7.

On August 8, 2024, Berglund injured his knee at home. [79] ¶ 19. He told Glagola and Moseley that he would be absent, and he missed work on August 9 and 12. [79] ¶¶ 20–22, 24. When they spoke on August 10, neither he nor Moseley mentioned FMLA leave, and Berglund had not contacted human resources or The Hartford, Heidelberg's third-party leave administrator. [79] ¶¶ 22–23. On August 13, Moseley called Berglund and told him that he was fired for exceeding the permissible number of attendance points. [79] ¶ 26. Heidelberg's senior human-resources

---

response to Berglund's statement of additional material facts, [84], where both parties' assertions and responses are set forth in each document.

manager had recommended the termination because no leave claim had been filed within what she understood to be a two-day window; she later testified that the episode "was a mistake." [84] ¶ 1.

Hours after the call, Berglund contacted The Hartford for the first time. [79] ¶ 27. When Moseley learned that Berglund had applied for FMLA leave, he rescinded the termination, on August 26, and Berglund was placed on FMLA leave until his twelve weeks ran out on October 28, 2024. [79] ¶¶ 29–31, 38–39. Berglund lost no wages because of the termination—he could not work during those thirteen days because of his injury—but his accrued vacation was paid out. [79] ¶ 32.

Moseley also told Berglund that when he returned, he would work as a general mechanic in the Lockport shop rather than in the marine department, with the same pay, seniority, and benefits. [79] ¶¶ 33–34. The parties dispute whether the two jobs were equivalent. [79] ¶ 34; [84] ¶¶ 14–17. In September 2024, while Berglund was on leave, Heidelberg hired another mechanic who took over Berglund's marine role; whether the other mechanic was hired to replace Berglund is also disputed. [79] ¶ 36; [84] ¶¶ 12–13.

Berglund had knee surgery, and when his FMLA leave ran out he was incapable of performing the essential functions of his position. [79] ¶¶ 37, 40. On October 24, he asked Heidelberg's regional human-resources director, to extend his leave through December 10 as an accommodation under the ADA. [79] ¶¶ 10, 41. Heidelberg granted the extension. [79] ¶ 43. When his doctor later kept him out

through December 23, Berglund asked for more time, and Heidelberg granted that too. [79] ¶ 44.

By mid-October, communications about Berglund's status went primarily through lawyers on both sides. [79] ¶ 45; [84] ¶ 20. In a letter to counsel dated December 17, 2024, Heidelberg set December 24 as Berglund's return date. [84] ¶¶ 18, 20. That month, Berglund's lawyer told Heidelberg that she interpreted "the Company's refusal to return him to his position in the marine shop as a constructive discharge." [79] ¶ 46. On December 23, Berglund's surgeon cleared him to return the next day. [79] ¶ 48. Berglund gave the surgeon's note to his lawyer, but he did not give it to Heidelberg until discovery, and he did not tell anyone at Heidelberg that he could return. [79] ¶ 49. He did not report to work on December 24, and Heidelberg fired him under a rule calling for termination after three consecutive unapproved absences; its letter was dated January 9, 2025. [79] ¶¶ 50–51; [84] ¶ 21.[2]

## III. Analysis

### A. FMLA

The FMLA entitles an eligible employee to twelve workweeks of leave in a twelve-month period for a serious health condition that makes him unable to perform the functions of his position, 29 U.S.C. § 2612(a)(1)(D), and, on return from that leave, to restoration to the position he held or an equivalent one, 29 U.S.C. § 2614(a)(1).

[2] Berglund denies defendants' account of the termination decision for lack of personal knowledge and because he disputes notice of his return date, [79] ¶ 50, but he does not dispute that he did not report to work. *See* [84] ¶ 21.

Claims under the FMLA "generally come in two forms: interference and retaliation." *Juday v. FCA US LLC*, 57 F.4th 591, 595 (7th Cir. 2023); *see* 29 U.S.C. § 2615(a).

1. *Interference*

To prevail on an interference claim, Berglund must show (1) that he was eligible for the FMLA's protections, (2) that Heidelberg was covered by the Act, (3) that he was entitled to leave, (4) that he provided sufficient notice, and (5) that Heidelberg denied him FMLA benefits to which he was entitled. *Davis v. Ill. Dep't of Hum. Servs.*, 137 F.4th 641, 648 (7th Cir. 2025).[3] Even then, relief requires "prejudice," meaning harm resulting from the violation. *Ziccarelli v. Dart*, 35 F.4th 1079, 1084–85 (7th Cir. 2022). The Act's remedial provision "provides no relief unless the employee has been prejudiced by the violation," because "[t]he remedy is tailored to the harm suffered." *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002).

Defendants challenge only prejudice as to the August termination, [65] at 8–11, so I assume that firing Berglund for absences that turned out to qualify for FMLA leave interfered with his rights. But the termination did not harm him. It lasted thirteen days, Berglund could not have worked during them, and he lost no wages. [79] ¶¶ 26, 30, 32. He was then placed on FMLA leave and received the rest of his twelve weeks. [79] ¶¶ 31, 38–39. "A plaintiff cannot collect damages for periods of time in which he otherwise could not have worked for the company." *Simon v. Coop. Educ. Serv. Agency #5*, 46 F.4th 602, 612 (7th Cir. 2022) (citing *Franzen v. Ellis Corp.*, 543 F.3d 420, 426 (7th Cir. 2008)).

[3] Defendants do not contest that the first four elements are satisfied. [65] at 9.

Berglund argues that prejudice is not a synonym for back pay. [78] at 8–9. That is true, but the plaintiff in *Simon* returned from leave to a position far below her abilities and spent most of a school year there—"harm for which the FMLA provides a remedy" even though she sought no damages. 46 F.4th at 604–05, 612. Berglund spent the thirteen days recovering from his injury, as he would have if he had never been fired in August.

Nor was the payout of Berglund's vacation a lost benefit. The Act compensates benefits "denied or lost to such employee by reason of the violation," 29 U.S.C. § 2617(a)(1)(A)(i)(I), and Berglund was paid the value of his vacation. [79] ¶ 32. Both sides describe Heidelberg's practice as running vacation concurrently with FMLA leave, [78] at 9; [85] at 4, so the vacation would have been used during the leave that followed in any event. And equitable relief, which Berglund also invokes, [78] at 9, is a remedy for harm, not a substitute for it. *See Ragsdale*, 535 U.S. at 89. Berglund was reinstated within two weeks, and he identifies no other equitable relief that could redress a termination undone before it cost him anything.

The rest of the interference claim concerns Heidelberg's hiring of the other mechanic, its plan to return Berglund to the Lockport shop, and the January 2025 termination. [78] at 13–15, 17–18. The FMLA entitles an employee, "on return from such leave," to be restored to his former position or to "an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a)(1). But "an employer has no duty under the FMLA to return an employee to his or her position, if that employee cannot perform an

essential function of the job." *James v. Hyatt Regency Chi.*, 707 F.3d 775, 780–81 (7th Cir. 2013); *see also Hendricks v. Compass Grp., USA, Inc.*, 496 F.3d 803, 806 (7th Cir. 2007); 29 C.F.R. § 825.216(c). Berglund could not perform the essential functions of his job when his twelve weeks ran out on October 28, 2024, or for nearly two months afterward, and he never returned at all. [79] ¶¶ 39–40, 48–51. The restoration right never came due, so it does not matter whether the Lockport position was equivalent to the marine job, and I do not decide that question.

Berglund argues that the interference occurred earlier, while his entitlement was still live, when Heidelberg filled his marine position with someone else. [78] at 15. But the statute does not require an employer to hold an employee's particular job open during leave. It gives the employer the choice of restoring the employee to the same position or an equivalent one, 29 U.S.C. § 2614(a)(1)(A)–(B), and it preserves the right to reinstatement "even if the employee has been replaced or his or her position has been restructured to accommodate the employee's absence." 29 C.F.R. § 825.214. Filling the job in the meantime did not deny that right to an employee who could not come back before his leave ran out. Nor could any earlier decision about where Berglund would work have prejudiced him: he could not have returned to any job before his FMLA leave expired, and after that the FMLA did not guarantee him one.

For the same reason, the January 2025 termination cannot support an interference theory: Berglund had exhausted his FMLA leave more than two months

earlier, and there were no FMLA benefits left to deny. [79] ¶ 39. The interference claim fails.

2. *Retaliation*

A retaliation claim requires Berglund to show that he engaged in statutorily protected activity, that Heidelberg took an adverse action against him, and that the protected activity caused the adverse action. *Freelain v. Vill. of Oak Park*, 888 F.3d 895, 901 (7th Cir. 2018). Unlike interference, the claim "requires proof of discriminatory intent—evidence that the employer 'was acting under a prohibited animus.'" *Chitwood v. Ascension Health All.*, 168 F.4th 493, 498 (7th Cir. 2026) (quoting *Juday*, 57 F.4th at 596).[4]

Berglund does not contend that the January 2025 termination was retaliatory; he disclaimed that contention at his deposition and defends only his interference and accommodation theories as to that termination. [79] ¶ 55; [78] at 17. In any event, "terminating an employee for failing to return to work after FMLA leave is exhausted is not retaliatory," *Chitwood*, 168 F.4th at 502, and Berglund's argument that he lacked clear notice of his return date, [78] at 18–19, fails for the reasons discussed below. *See below* III.B.3.

That leaves the August termination, which Berglund says was payback for his intermittent FMLA leave. [79] ¶ 52; [78] at 9–13. Defendants contest only causation, [65] at 11–12, and the record does not permit a finding of it. Moseley told Berglund

[4] Whether the protected activity must be a but-for cause or only a motivating factor is unsettled, *Chitwood*, 168 F.4th at 499 n.2, but Berglund does not contend that the choice matters here, [78] at 9–10, and it does not.

that the August 9 and 12 absences had put him over the permissible number of points. [79] ¶ 26. When Moseley made the call, Berglund had not asked for FMLA leave for those days or mentioned the FMLA to Moseley or human resources. [79] ¶¶ 22–23, 26–27. An employee fired before he tries to invoke the FMLA for particular absences cannot show that he was fired for taking protected leave on those days. *See Chitwood*, 168 F.4th at 499.

Berglund has no evidence to suggest that the August termination was in retaliation for his earlier, intermittent FMLA leave. The evidence that Moseley was "watching" shows that the plant manager paid attention to the attendance of an employee two points from the termination threshold. [84] ¶¶ 6–7. Drawing all inferences in Berglund's favor, I accept that Moseley was also paying attention to Berglund's intermittent FMLA leave. [84] ¶ 11. But awareness of an employee's FMLA use and concern about his attendance do not establish retaliation. *See Chitwood*, 168 F.4th at 499 (messages discussing "prior concerns about her attendance and FMLA use" did not establish pretext or retaliation).[5] Nor can Glagola's frustration or Melvin's warning be attributed to the decision. Berglund himself says the disciplinary authority was Moseley's, not Glagola's, [78] at 12; Glagola was not consulted, [84] ¶ 4; and there is no evidence that Glagola's or

[5] Berglund argues that Heidelberg counted FMLA absences toward his point total in violation of 29 C.F.R. § 825.220(c), [78] at 12–13, but he identifies no evidence that it did. The testimony he cites concerns Glagola's frustration, not how points were assessed, [79] ¶ 17; [84] ¶ 8, and his own evidence is that FMLA absences generated "no points." [84] ¶ 3.

Melvin's actions "were a proximate cause of the adverse employment action." *Vesey v. Envoy Air, Inc.*, 999 F.3d 456, 462 (7th Cir. 2021).

Nor do Heidelberg's explanations suggest pretext. To support an inference of pretext, "explanations must actually be shifting and inconsistent." *Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866, 881 (7th Cir. 2016) (quoting *Schuster v. Lucent Techs., Inc.*, 327 F.3d 569, 577 (7th Cir. 2003)). The senior human resources manager recommended termination because no leave claim was on file; Moseley fired Berglund "per the policy of attendance." [84] ¶¶ 1, 3. Those are the same explanation from two vantage points: Heidelberg treated absences not covered by FMLA leave as unexcused and counted them under its attendance policy. The human resource manager's recognition that her understanding of the filing window was wrong shows an error, not a lie. Pretext "involves more than just faulty reasoning or mistaken judgment on the part of the employer; it is [a] lie, specifically a phony reason for some action." *Tibbs v. Admin. Off. of the Ill. Cts.*, 860 F.3d 502, 506 (7th Cir. 2017) (cleaned up). Termination for absences not then designated as FMLA leave, followed by rescission once Heidelberg learned that Berglund had applied for that leave, does not permit an inference that FMLA leave caused the termination. The retaliation claim fails.

### B. Failure to Accommodate

The ADA prohibits discrimination against "a qualified individual on the basis of disability," 42 U.S.C. § 12112(a), including "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability," 42 U.S.C. § 12112(b)(5)(A). Berglund must

show that (1) he was a qualified individual with a disability, (2) Heidelberg was aware of his disability, and (3) Heidelberg failed to reasonably accommodate it. *Youngman v. Peoria Cnty.*, 947 F.3d 1037, 1042 (7th Cir. 2020).

1. *Qualified individual*

A qualified individual is one "who, with or without reasonable accommodation, can perform the essential functions of the employment position." 42 U.S.C. § 12111(8). "Not working is not a means to perform the job's essential functions," and "[i]nability to work for a multi-month period removes a person from the class protected by the ADA." *Byrne v. Avon Prods., Inc.*, 328 F.3d 379, 381 (7th Cir. 2003). "A multimonth leave of absence is beyond the scope of a reasonable accommodation under the ADA." *Severson v. Heartland Woodcraft, Inc.*, 872 F.3d 476, 479 (7th Cir. 2017). The FMLA gives time off to employees who cannot work; the ADA accommodates employees who can. *See id.* at 481.

When Berglund asked for an accommodation, he had been off work since August 9 and could not perform the essential functions of his job. [79] ¶¶ 21, 40–41. The only accommodation he sought was more leave—first six weeks, then eight—on top of the twelve weeks the FMLA had provided. [79] ¶¶ 41, 44. That is outside the scope of the ADA. *See Severson*, 872 F.3d at 478–79 (employee needed two to three more months of leave after exhausting FMLA leave); *Byrne*, 328 F.3d at 380–81 (employee unable to work from November through mid-January).

Berglund argues that the accommodation actually at issue is the two weeks between December 10 and December 24. [78] at 15–16. *Severson* did recognize that "a short leave of absence—say, a couple of days or even a couple of weeks—may, in

appropriate circumstances, be analogous to a part-time or modified work schedule." 872 F.3d at 481. But that passage describes brief absences that allow an employee to keep doing his job, not the last installment of a continuous absence that had already lasted four months. Dividing a multi-month leave into two-week pieces does not transform it into a reasonable accommodation.

2. *Reasonable accommodation*

Even if Berglund were a qualified individual, Heidelberg did not fail to accommodate him. Berglund asked for leave through December 10, and Heidelberg granted it. [79] ¶¶ 41, 43. He asked for leave through December 23, and Heidelberg granted that too. [79] ¶ 44. Its December 17 letter set December 24 as his return date—the date his surgeon had cleared him to return. [79] ¶ 48; [84] ¶¶ 18, 25. Berglund calls the two weeks between December 10 and December 24 "the increment actually in dispute," [78] at 16, but Heidelberg gave him those two weeks. *See also* n.6 below. An employer that provides the accommodation the employee requests has not failed to accommodate him.

3. *Interactive process*

Berglund's principal argument is that Heidelberg caused a breakdown in the interactive process. [78] at 16–17. But a breakdown in that process is not independently actionable; the plaintiff must show that it resulted in the employer's failure to provide a reasonable accommodation. *Rehling v. City of Chi.*, 207 F.3d 1009, 1015–16 (7th Cir. 2000). Heidelberg provided the only accommodation Berglund sought, so the argument fails for that reason alone.

It fails on its own terms as well, because Berglund caused the breakdown. "Liability for failure to provide reasonable accommodations ensues only where the employer bears responsibility for the breakdown." *Beck v. Univ. of Wis. Bd. of Regents*, 75 F.3d 1130, 1137 (7th Cir. 1996). "A party that fails to communicate, by way of initiation or response, may also be acting in bad faith." *Id.* at 1135. After the December 17 letter, communication stopped on Berglund's side: his lawyer responded with a claim of constructive discharge, and when Berglund was cleared to return, he did not tell Heidelberg or come to work. [79] ¶¶ 46–47, 49–50; [84] ¶ 21. Berglund says that his knowledge of what his lawyer told Heidelberg is limited by privilege, [79] ¶ 49, but he points to no evidence that anyone passed the clearance along.

Berglund's arguments to the contrary do not create a genuine dispute. The return date moved from December 10 to December 24 because Berglund asked for more time. [79] ¶ 44. That Moseley did not recognize a return-to-work letter bearing his signature block, and that Biggs and Glagola never saw one, [84] ¶ 19, says nothing about whether the December 17 letter reached Berglund's side. And the record shows that Berglund was still represented in late December: he gave his surgeon's December 23 note to his lawyer, and his lawyer was corresponding with Heidelberg about his return that month. [79] ¶¶ 46, 49.[6]

[6] Berglund's assertion that the letter went to a lawyer he no longer had, [84] ¶ 20, finds no support in the testimony he cites, which shows only that communications went through counsel and that Moseley did not know whether Berglund received Heidelberg's letters. Defendants identify the recipient as Kate Sedey, [84] ¶ 20, the same lawyer to whom Berglund gave his December 23 clearance. [79] ¶ 49. A party who communicates through counsel "is considered to have notice of all facts, notice of which can be charged upon the attorney." *Link v. Wabash R.R. Co.*, 370 U.S. 626, 634 (1962) (cleaned up).

The dispute about notice would not change the outcome in any event. Berglund himself asked for leave only through December 23, and he knew his surgeon had cleared him to return the next day. [79] ¶¶ 44, 48–49. Whether or not he saw Heidelberg's letter, he knew the leave he had requested was over, and he said nothing. An employer "has to meet the employee half-way." *Bultemeyer v. Fort Wayne Cmty. Schs.*, 100 F.3d 1281, 1285 (7th Cir. 1996). Heidelberg did more than that. No reasonable jury could find that Heidelberg bears responsibility for the breakdown. The failure-to-accommodate claim fails.

## IV. Conclusion

Defendants' motion for summary judgment, [64], is granted. Berglund's motion for partial summary judgment, [45], is denied. Enter judgment and terminate civil case.

ENTER:

Manish S. Shah
United States District Judge

Date: September 30, 2026